UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Gwen Brown SMERALDO,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civ. No. 14–7394 (KM)<br><br>OPINION |

### KEVIN MCNULTY, U.S.D.J.:

Gwen Brown Smeraldo brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Title II Disability Insurance Benefits ("DIB"). Smeraldo has been diagnosed with schizophrenia, paranoid type, and alleges that she suffers from a chemical imbalance, paranoia, anxiety, and depression. (*See, e.g.*, R. 56[1] (ECF. No. 5); Pl. Br. 2 (ECF No. 10))

For the reasons set forth below, the Administrative Law Judge's ("ALJ") decision is REMANDED for further proceedings consistent with this opinion.

## I. BACKGROUND

Smeraldo seeks to reverse an ALJ's finding that she was not disabled from February 10, 2010, through December 31, 2010, Smeraldo's date last insured. (R. 16–24)

Smeraldo worked as a dietitian and dietary technician intermittently from 1983 to 2004. (R. 31, 35–37) In April 1995, Smeraldo spent two weeks at

---

[1] "R. _" refers to the pages of the administrative record filed by the Commissioner as part of his answer. (ECF No. 5)

1

Saint Barnabas Medical Center, where she was treated for a psychiatric condition. (R. 254) Smeraldo spent another month in the Clara Maass Medical Center in February and March of 1998, where she was again treated for a psychiatric condition. (R. 213-14) Shortly thereafter, Smeraldo started treatment with Dr. Iskandarani, who diagnosed her with schizophrenia, paranoid type. (R. 314) Dr. Iskandarani has continued to monitor her condition since the last hospitalization, seeing her approximately three times a year. (R. 272-319)

Ms. Smeraldo initially applied for DIB benefits on May 22, 2012. (R. 133) That claim was first denied on July 26, 2012 (R. 61, 73), and denied again on reconsideration on December 3, 2012 (R. 72, 81). On January 11, 2013, Smeraldo filed a request for a hearing. (R. 84) On August 1, 2013, an ALJ held a hearing, at which Smeraldo was represented by counsel. Both Smeraldo and a vocational expert testified at the hearing. (R. 28-52) On November 18, 2013, Administrative Law Judge ("ALJ") Leonard Olarsch denied Smeraldo's application for DIB benefits. (R. 13-24) On September 25, 2014, the Appeals Council denied Smeraldo's request for review, making the ALJ's decision the final decision of the Commissioner. (R. 1-6) Smeraldo now appeals that decision.

## II. DISCUSSION

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). A claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

### A. Five-Step Process and this Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. Review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the SSA to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine

whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings... leniency should be shown in establishing the claimant's disability, and... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Secretary's decision, or it may remand the matter to the Secretary for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007).

Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221–222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or

4

if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "'explicitly' weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994).

### B. The ALJ's decision

ALJ Olarsch determined that Smeraldo's date last insured (*see* https://secure.ssa.gov/poms.nsf/lnx/0425501320) was December 31, 2010, and that the alleged disability onset date was February 10, 2010. (R. 18) The ALJ concluded that from February 10, 2010, through December 31, 2010, Smeraldo was not "under a disability within the meaning of the Social Security Act." (R. 16) The ALJ's determinations may be summarized as follows.

### 1. Step 1

At step one, the ALJ determined that Smeraldo had technically engaged in substantial gainful activity during the period from her alleged disability onset date through her date last insured. This activity, however, consisted only of an unsuccessful work attempt. (R. 18)[2] The ALJ therefore moved on to step two.

---

[2] Smeraldo testified before the ALJ that she worked as a dietitian from February 2010 to May 2010 but they let her go because "[t]he job was so stressful and [she] felt really scared and nervous. [She] couldn't function." (R.33) Smeraldo also testified that she tried to work as a cashier in Shop-Rite in March 2013, but lasted only four days because she was too anxious and nervous to properly scan and bag the items. (R. 33–34)

5

### 2. Step 2

At step two, the ALJ found that Smeraldo had the following severe impairment: "schizophrenia, paranoid type." (R. 18) He added that the record showed Smeraldo endured two hospitalizations related to her illness: the first in 1995 for two weeks, and the second in 1998 for a month. (*Id.*) From Smeraldo's medical records (R. 213–15), the ALJ gleaned that the hospitalizations were for symptoms such as confusion, anxiousness, paranoia, and depression with psychosis. (R. 18–19) After the first hospitalization she was treated with antipsychotic medication. (R. 18) When she became pregnant, however, she stopped taking her medication, which led to her second hospitalization. (*Id.*) During the second hospitalization Smeraldo's medication was adjusted and her condition improved until she was discharged; thereafter she was to receive outpatient treatment and medication management as needed. (R. 19)

### 3. Step 3

At step three, the ALJ determined that, through the date last insured, none of Smeraldo's impairments or combinations of impairments met or medically equaled the severity of one of the listed impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A (specifically, § 12.03, governing schizophrenia). (R. 19–20) The ALJ, focusing on § 12.03(B), arrived at this determination by finding that Smeraldo faced only mild restrictions as to daily living activities (she was able to tend to her own personal needs, drive, take care of her daughter, and do housework and shopping). (R. 19) She had only moderate difficulties in social functioning (she talks on the phone with family members and attends church). She has had moderate difficulties with concentration, persistence, or pace (she can concentrate and handle money). (*Id.*) She has

experienced no extended episodes of decompensation.[3] (*Id.*) Several of these findings, however, were qualified by a finding to the effect of "when she is not having an episode." (*Id.*)

---

[3] The Part A criteria are purposely set at a high level, to identify clear cases of disability without further analysis. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A § 12.03, governing schizophrenia, reads as follows:

> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
> A. Medically documented persistence, either continuous or intermittent, of one or more of the following:
>    1. Delusions or hallucinations; or
>    2. Catatonic or other grossly disorganized behavior; or
>    3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:
>       a. Blunt affect; or
>       b. Flat affect; or
>       c. Inappropriate affect;
>    or
>    4. Emotional withdrawal and/or isolation;
>
> AND
>
> B. Resulting in at least two of the following:
>    1. Marked restriction of activities of daily living; or
>    2. Marked difficulties in maintaining social functioning; or
>    3. Marked difficulties in maintaining concentration, persistence, or pace; or
>    4. Repeated episodes of decompensation, each of extended duration;
>
> OR
>
> C. Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>    1. Repeated episodes of decompensation, each of extended duration; or
>    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

7

### 4. Step 4 - RFC

The ALJ then determined Smeraldo's RFC, a determination that overlapped in some respects with the Step 3 analysis. (*See* R. 20) The ALJ found that her mental impairments limited her to "simple, routine, repetitive tasks not performed in a fast-paced production environment involving only simple work-related decisions and few work-place changes." (*Id.*) In assessing Smeraldo's RFC, the ALJ made two credibility assessments. The ALJ found that Smeraldo's own "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 21) More importantly, the ALJ also decided to give the findings of Smeraldo's treating psychiatrist, Dr. Nimer Iskandarani, "only some weight." (R. 22)

In doing so, the ALJ relied to a great degree on the opinions of two state agency physicians. (R21–22) He also noted the apparent stability in Smeraldo's condition and the conservative nature of her treatment. (*Id.*) The ALJ cited the opinions of the state agency physicians (R. 57, 67) that "the objective evidence does not establish that the claimant would be precluded from all work activity"; rather, Smeraldo's RFC limits her to "unskilled work, in a slow paced environment, with only simple decision-making and few changes in the workplace." (R. 22–23)

The ALJ concluded that, based on her RFC, Smeraldo was unable to perform any past relevant work. (R. 23) The ALJ further determined that, since Smeraldo was born on December 2, 1958, and was 52 years old, she was categorized as an "individual closely approaching advanced age, on the date last insured." (*Id.*) The ALJ also noted that Smeraldo had a high school education and was able to communicate in English. (*Id.*) The ALJ added that "[t]ransferability of job skills is not material to the determination of disability

---

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (*Id.* citing SSR 82–41 and 20 C.F.R. Pt. 404, Subpt. P, App. 2)

### 5. Step 5

At step five, the ALJ considered Smeraldo's "age, education, work experience, and residual functional capacity," and found that "there were jobs that existed in significant numbers in the national economy that [Smeraldo] could have performed." (*Id.*) The ALJ relied on the vocational expert's testimony that a hypothetical person with the characteristics and abilities that the ALJ found Smeraldo to possess could perform jobs such as microfilm mounter, tabber, and mail sorter. (R. 24) Thus the ALJ determined that a finding of "not disabled" was appropriate, and Smeraldo was denied disability benefits. (*Id.*)

### C. Smeraldo's appeal

Smeraldo identifies no significant error of law in the ALJ's application of the five-part analytical scheme. Her arguments for the most part challenge the ALJ's decision to grant "only some weight" to the findings of Smeraldo's treating physician, Dr. Iskandarani, during the ALJ's evaluation of the medical evidence and assessment of Smeraldo's RFC. (*See* Pl. Br. 12) Smeraldo asserts that the ALJ "placed his own opinion over that of the treating physician" and failed to properly justify his findings with substantial evidence. (*Id.*)

### D. Analysis

#### 1. Standard for Evaluating the Opinion of the Treating Physician

In general, the opinion of a medical professional who has treated the claimant is entitled to deference. 20 CFR § 404.1527(c)(2)("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s)..."); *see also Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("Treating physicians' reports should be

9

accorded great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." (internal quotation marks omitted)). The Third Circuit has held that unless there is contradictory medical evidence in the record, an ALJ may not reject a treating physician's opinion. *See Brownawell v. Comm'r of Soc. Sec*, 554 F.3d 352, 355 (3d Cir. 2008). Further, an ALJ's unsupported judgment, speculation, or lay opinion is not sufficient to outweigh a treating physician's opinion. *See Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir. 2000); *see also Plummer*, 186 F.3d at 429 ("an ALJ may not make speculative inferences from medical reports.").

But the opinion of a treating source must be given "controlling weight" only when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 CFR § 404.1527(c)(2). Further, "[t]he law is clear... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 197 (3d Cir. 2011). Rather, "[s]tate agent opinions merit significant consideration as well." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

If the treating physician's opinion is not accorded controlling weight, the ALJ must weigh it, like any other medical opinion, in light of the factors set forth in 20 CFR § 404.1527. *See* 20 CFR § 404.1527(c)(l-6)(ALJ must consider: (i) the examining relationship between the claimant and the doctor; (ii) the treatment relationship between the claimant and the doctor; (iii) the extent to which the opinion is supported by relevant evidence; (iv) the extent to which the opinion is consistent with the record as a whole; and (v) whether the doctor providing the opinion is a specialist. Although "contradictory medical evidence is required for an ALJ to reject a treating physician's opinion outright, such an opinion may be afforded more or less weight depending on the extent to which

10

supporting explanations are provided." *Plummer*, 186 F.3d at 429 (citation omitted).

Smeraldo relies on *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001), a Third Circuit case, as an example of an ALJ not properly explicating the basis of his conclusions regarding the treating physician's opinion. (Pl. Br. 13–14) In *Fargnoli*, the Third Circuit remanded the case back to the ALJ because "the ALJ's sparse synopsis" of the record made his decision "impossible to review." 247 F.3d at 42. Specifically, the Third Circuit found that the ALJ's discussion of the medical evidence regarding the treating physician was limited to "four diagnostic tests and five treatment notes" but "the record reflect[ed] over 115 pages of relevant, probative treatment notes." *Id.* at 41–42. Thus, they "c[ould] not] tell if significant probative evidence was not credited or simply ignored." *Id.* at 42 (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).

### 2. The ALJ's Evaluation

I have decided to remand this case. In doing so, I do not mean to criticize the conscientious ALJ, whose opinion evinces careful consideration of the matter. I nevertheless require further explanation of the ALJ's decision to give the treating physician's evidence "only some weight" (R. 22; *see* Section II.B, *supra*), as well as some other matters.

The ALJ reviewed and summarized the major findings of Dr. Iskandarani's two reports including, *inter alia*, Dr. Iskandarani's opinion that Smeraldo "had poor or no ability to perform many of the mental abilities needed to perform unskilled work." *Id.* Dr. Iskandarani found that Smeraldo had manifested paranoia; anxiety; fear; flat affect; non-productive speech, poor energy, concentration, and attention span; poverty of thought; average intelligence; fair memory; and limited judgment. (R. 22 citing R. 236–37, 264–65) Specifically with respect to potential employment, Dr. Iskandarani determined that Smeraldo

11

> had poor or no ability to perform many of the mental abilities needed to perform unskilled work, including but not limited to the following: remembering work-like procedures; understanding, remembering and carrying out complex as well as very short and simple instructions; maintaining attention for two-hour segments; sustaining an ordinary work routine; making simple work-related decisions; performing at a consistent pace without an unreasonable number and length of rest periods; and asking simple questions or requesting assistance.

(R. 22 citing R. 268)

Dr. Iskandarani opined that Smeraldo would be absent from work more than three times per month, and experienced marked restrictions in performing daily living activities, moderate difficulties in social functioning, and constant deficiencies in concentration, persistence, and pace. (R. 22 citing R. 267, 270)

Dr. Iskandarani's reports note other deficiencies, not specifically discussed in the ALJ's opinion, including, *inter alia*, symptoms of mood disturbance, loss of intellectual ability of 15 IQ points or more, recurrent panic attacks, difficulty thinking or concentrating, time or place disorientation, illogical thinking or loosening of associations; persistent irrational fears, pathological dependence or passivity; poor or no ability to complete a normal workday and workweek without interruptions from her psychological symptoms, respond appropriately to changes in a normal work setting, or deal with normal work stress; and continual episodes of deterioration or decompensation in work or work-like settings. (R. 265, 268–71)

Dr. Iskandarani is a specialist; he is in a long standing professional relationship with the patient; he has examined her first hand and is familiar with her condition; he gives specific reasons for his conclusions; his opinions are consistent with his diagnosis and the evidence. In short, his opinion has significant indicia of reliability. *See* 20 CFR § 404.1527(c)(1-6).

In discounting Dr. Iskandarani's opinion, the ALJ noted, for example, that Smeraldo only visited Dr. Iskandarani about three times a year; that she was on medication and had not been hospitalized since 1998; and that the

12

reviewing state agency physicians, who reviewed Smeraldo's claim, concluded that she was in partial remission. (R. 21-22)

Some factors give me pause in accepting the ALJ's analysis under the substantial evidence standard of review.

First, the diagnosis is schizophrenia, paranoid type, a serious mental impairment. I am aware that mental conditions are increasingly treated as spectrum disorders, and that medication may blunt their effect, but I believe more discussion is required in order for me to accept that such a condition nevertheless permits Ms. Smeraldo to work. There is very substantial evidence that Smeraldo has been unable to work (and has tried and failed to hold jobs, including unskilled ones) for a period long preceding any application for disability benefits, as well as afterwards. *See* note 2, *supra*. Dr. Iskandarani, who has treated Smeraldo for many years, has given a specific and detailed list of potentially disabling symptoms. These support his conclusions of, *e.g.*, marked daily living restrictions; moderate social functioning difficulties; constant deficiencies of concentration, persistence, or pace; and continual extended episodes of decompensation. (R. 270-71)

Second, the state agency physicians concluded that her symptoms were not as serious as those described by Dr. Iskandarani. These conclusions do not seem to be based on any independent examination of Ms. Smeraldo. (*See* R. 56.) And even the state consultants found certain symptoms to be more serious than the ALJ did.[4] Also the state consultants' conclusion, relied on by the ALJ, that "the claimant's treating physician's report was consistent with a finding of an ability to meet the demands of unskilled work" requires more explanation. (R. 21) Dr. Iskandarani's report, fairly read, does not support that assertion.

---

[4] The ALJ found mild restrictions of daily living; moderate restrictions of social functioning and concentration, persistence, or pace; and no extended episodes of decompensation. (R. 19) The state agency physicians differed in that they only found mild restrictions of social functioning, but they found one or two extended episodes of decompensation. (R. 57, 68)

13

The only other proffered support is a somewhat circular reference on reconsideration: "Reviewed original MER, which supports the initial finding. There is no new MER." (R. 70)

Third, the ALJ's decision relies on Smeraldo's conservative treatment schedule (she sees Dr. Iskandarani about three times a year). Hers, however, is a chronic condition, not very amenable to the "talking cure" of regular psychoanalysis; it may well be that periodic monitoring of medication is the most that can profitably be done (or the most that insurance will cover). I am unable to discern whether the treatment schedule is atypical or indicative of a less serious condition. Dosages of medications are not indicated in the ALJ's opinion.

Fourth, certain evidence cited in connection with the analysis of 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A (specifically, § 12.03, governing schizophrenia) falls short of substantiality. As to daily living activities, the cited evidence of only "mild" impairment is perhaps substantial (she tends to her personal needs, drives, takes care of her daughter, does housework and shopping). (R. 19) As to social functioning, however, the finding of only "moderate" (rather than "marked") difficulty is more suspect. (*Id.*) The only evidence cited is that Smeraldo talks on the phone with family members and attends church, but neither having a phone conversation nor occupying a pew tends to suggest substantial social functioning. (*Id.*) In finding only "moderate" difficulties with concentration, persistence, or pace, the opinion states only that she can concentrate (a conclusory statement) and handle money. (*Id.*) Again, this evidence falls short of being substantial. The opinion states that Smeraldo has experienced no extended episodes of decompensation. (*Id.*) The medical evidence is to some extent conflicting, but the ALJ's conclusion appears to go beyond the Commissioner's side of that conflict: the state agency physicians found one or two extended episodes of decompensation. (R. 57, 68). Several of these findings, moreover, were qualified by statements to the effect of

14

"when she is not having an episode." (R. 19) That is too broad a qualifier to permit me to take the findings at face value.

A final note. The analysis of steps three and four tends to overlap, but on remand they should be approached distinctly. Even in advance of the RFC analysis (where the ALJ and the parties have appeared to focus their efforts),[5] there is much to suggest that a finding for the applicant on Step 3 might be appropriate.[6]

## III. CONCLUSION

For the foregoing reasons, the ALJ's decision is REMANDED for further proceedings consistent with this opinion.

Dated: January 6, 2015

_____
**KEVIN MCNULTY**
**United States District Judge**

---

[5] The Commissioner addressed the ALJ's review of step three (Def. Br. 5–7 (ECF No. 11)), Smeraldo stressed on reply that she "did not make [a step three] argument... but rather stated that the ALJ failed to properly evaluate plaintiff's mental impairments" (Pl. Reply 1 (ECF No. 12)). Either way, whether the ALJ properly evaluated the medical evidence is the dispositive issue.

Smeraldo further argues that the ALJ posed hypotheticals to the vocational expert that failed to include all of Smeraldo's limitations. (Pl. Br. 16) The ALJ may base a hypothetical on the conditions he finds to be supported by the record. I am remanding, however, based on errors at the earlier steps of the analysis, so I do not reach this contention. I do note that Smeraldo's lawyer posed hypotheticals based on Dr. Iskandarani's full diagnosis, and that the vocational expert acknowledged that such a hypothetical individual "would not be able to be employed in the competitive labor market." (R. 49–50)

[6] I note that Smeraldo also applied for Title XVI Supplemental Security Income on June 19, 2012 (R. 127) (see Pl. Br. 9)

15